**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

SHERRY LYNN MOORE,                )
                                  )
                  Plaintiff,      )
                                  )
        vs.                       )                Case No. 1:23-cv-0112-MTS
                                  )
LELAND DUDEK, *Acting Commissioner of*  )
*the Social Security Administration,*[1]  )
                                  )
                  Defendant.      )

**MEMORANDUM AND ORDER**

This matter is before the Court for review of the final decision of Defendant, the Acting

Commissioner of the Social Security Administration, denying the application of Sherry Moore

("Plaintiff") for Disability Insurance Benefits ("DIB").[2]   On February 12, 2021, Plaintiff

applied for DIB under Title II of the Social Security Act, 42 U.S.C. §§ 401–434 (the "Act").

(Tr. 14).  Plaintiff alleges disability due to obesity, degenerative disk disease, arthritis, bipolar

disorder, depression, anxiety, severe back spasms, severe IBS, difficulty standing, and

difficulty walking, with an alleged onset date of December 14, 2018.  (Tr. 14).  In August

2022, following a hearing, an Administrative Law Judge ("ALJ") issued his decision finding

that Plaintiff was not disabled as defined in the Act.  (Tr. 30).  For the following reasons, the

Court reverses and remands.

---

[1] Leland Dudek is now the Acting Commissioner of the Social Security Administration.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Dudek is substituted as the proper defendant.

[2] Section 405(g) of Title 42 provides for judicial review of the SSA Commissioner's "final decision."  After the ALJ concluded Plaintiff was not disabled under the Act, (Tr. 30), the Appeals Council denied Plaintiff's request for review, (Tr. 1-7); thus, the ALJ's decision stands as the Commissioner's final decision.

I.    **Standard of Review and Legal Framework**

To be eligible for disability benefits, Plaintiff must prove that she is disabled under the Act. *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d). A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work" but also unable to "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

The Social Security Administration has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). Steps 1–3 require the claimant to prove: (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment. *Id.* at §§ 404.1520(a)–(d). If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to Steps 4 and 5. *Id.* at § 416.920(e). At this point, the ALJ assesses the claimant's residual functioning capacity ("RFC"), "which is the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009); 20 C.F.R. § 404.1545. The U.S. Court of Appeals for the Eighth Circuit has noted that the ALJ must determine a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations. *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005). At Step 4, the ALJ must determine whether the claimant can return to her past relevant work by

2

comparing the RFC with the physical demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(f). If the ALJ finds at Step 4 that a claimant can return to past relevant work, the claimant is not disabled. *Id.* If the ALJ finds at Step 4 that a claimant cannot return to past relevant work, the burden shifts at Step 5 to the Administration to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* at § 404.1520(g).

The court's role on judicial review is to decide whether the ALJ's determination is supported by "substantial evidence" on the record as a whole. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Even if substantial evidence would have supported an opposite decision or the reviewing court might have reached a different conclusion had it been the finder of fact, the Court must affirm the Commissioner's decision if the record contains substantial evidence to support it. *See McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome"); *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992) (explaining a court may not reverse merely because substantial evidence would have supported an opposite decision). The Eighth Circuit has emphasized repeatedly that a court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Astrue*,

3

621 F.3d 734, 738 (8th Cir. 2010) (quoting *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001)).  Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision," *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998), and not merely a "rubber stamp," *Cooper v. Sullivan*, 919 F.2d 1317, 1320 (8th Cir. 1990).

## II.   The ALJ's Decision

The ALJ's decision in this matter conforms to the five-step process outlined above.  At Step 1, the ALJ found Plaintiff did not perform substantial gainful activity ("SGA") during the alleged period of disability.  (Tr. 16).  At Step 2, the ALJ found Plaintiff had severe impairments of obesity, degenerative disc disease, bipolar disorder, depression and anxiety. (Tr. 16).  At Step 3, the ALJ found Plaintiff did *not* have an impairment or combination of impairments that met the severity of a statutorily recognized impairment.  (Tr. 19).  Thus, the ALJ found Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), with postural and environmental limitations.  (Tr. 21).  Plaintiff cannot climb ladders, ropes, or scaffoldings, and she needs to avoid concentrated exposure to slippery and uneven surfaces, hazardous machinery, and unprotected heights.  *Id.*  She is limited to understanding and remembering, and carrying out simple instructions, as well as occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, and crawling.  *Id.*  At Step 4, the ALJ found Plaintiff could not return to her past relevant work as a floor manager or baker.  (Tr. 28).  At Step 5, the ALJ considered Plaintiff's age, education, work experience, and RFC and found there were jobs in the national economy that Plaintiff can perform, despite her limitations, such as cashier II, office helper, and price marker.  (Tr. 29).  Consequently, the ALJ concluded Plaintiff is not disabled under the Act.  (Tr. 30).

4

**III.**    **Discussion**

The specific issues in this case are (1) whether the ALJ erred at Step 2 by failing to find that Plaintiff's gastrointestinal ("GI") impairments were severe and (2) whether the ALJ failed to properly consider the limitations caused by Plaintiff's GI impairments in assessing RFC.

**1.**    ***The ALJ Improperly Evaluated the Severity of Plaintiff's GI Impairments***

Plaintiff contends that the ALJ's determination that her GI impairments were not severe is not supported by substantial evidence because she was diagnosed with several GI impairments—including irritable bowel syndrome ("IBS"), gastroesophageal reflux disease ("GERD"), transient intussusception, gastritis, and not otherwise specified diarrhea, nausea, and vomiting—in 2018, and the record shows that she received regular treatment for those GI impairments from January 2018 until early 2019, when her husband lost his job and she lost her health insurance as a result.  She asserts that the ALJ failed to consider the objective medical records that pre-dated the alleged onset date of December 14, 2018, as those records were material evidence that related to conditions existing during the relevant time period. Plaintiff also argues that the ALJ failed to consider that her decrease in treatment during the relevant time period was caused by her inability to afford medical care after she lost her health insurance when her husband lost his job in 2019.  The Court agrees that the ALJ's assessment of the severity of Plaintiff's GI impairments at Step 2 is not supported by substantial evidence.

At Step 2, the ALJ determined that Plaintiff's "medical records for the period under consideration"—from her alleged onset date of December 14, 2018 through her date last insured of September 30, 2021—"d[id] not show that she has a gastrointestinal or genitourinary impairment that meets the standards for a severe impairment."  (Tr. 17).  The ALJ noted that Plaintiff had alleged that her severe IBS limited her ability to work in a July

20, 2021 adult disability report and that the record showed that Plaintiff presented to physicians with symptoms of fecal incontinence, chronic diarrhea, nausea, constipation, and abdominal pain from January 2018 until early 2019. *Id.* The ALJ reviewed Dr. Mark L. Gates's May 2018 CT report, which noted that Plaintiff had a one-year history of abdominal pain with a 60-pound weight loss. *Id.* In the CT report, Dr. Gates diagnosed Plaintiff with diverticulosis without diverticulitis, non-obstructing right nephrolithiasis with a simple right renal cyst, and an ovarian cyst. (Tr. 283–284). The ALJ then found—without explanation—that Plaintiff's "medical records for the period beginning on December 14, 2018 . . . d[id] not show that any of those impairments more than minimally affected the claimant's ability to perform basic work activities." (Tr. 17).

The ALJ discussed the findings of Dr. H. L. Schneider, a gastroenterologist who evaluated Plaintiff in June, July, and September of 2018. (Tr. 17). On June 26, 2018, Dr. Schneider noted that Plaintiff complained of diarrhea and incontinence and reported that she kept two sets of clothes with her wherever she went due to her fecal incontinence. (Tr. 290). During that visit, Dr. Schneider ordered additional testing and diagnosed Plaintiff with diarrhea, GERD, nausea, and vomiting. (Tr. 290–292). In July 2018, Dr. Schneider found that the results of Plaintiff's upper and lower endoscopy were consistent with gastritis. (Tr. 295). During a September 13, 2018, follow-up visit, Dr. Schneider noted that Plaintiff sometimes had diarrhea for two days, recommended that she take Imodium AD to help with the diarrhea, and diagnosed Plaintiff with IBS, morbid obesity, and GERD. (Tr. 308–310). The ALJ stated that on January 9, 2019—approximately one month after the amended onset date of December 18, 2018—Plaintiff reported that her IBS was "better controlled" to FNP Blake Borders. (Tr. 17, 407).

6

The ALJ considered the October 7, 2021, state agency consultative report prepared by FNP Margaret Dicus. (Tr. 17). In the report, Dicus noted that Plaintiff said that she was required to carry extra changes of clothing with her everywhere she went due to incontinence related to her severe IBS. (Tr. 524). Dicus stated that she had reviewed Plaintiff's "ortho[pedic] and pain clinic [records] dated 2018 and 2019" and that "[t]here [we]re no GI records at all related to her reports of severe IBS with fecal incontinence."[3] (Tr. 525). The ALJ then concluded—again, without explanation—that, "[a]lthough Dr. Schneider's 2018 treatment records discussed . . . [Plaintiff]'s problems with IBS and her reported incontinence," her medical records "for the period beginning on December 14, 2018 . . . d[id] not show that IBS me[t] the standards for a severe impairment." (Tr. 18).

At Step Two, the ALJ must determine whether the claimant has "a severe medically determinable physical or mental impairment," or "a combination of impairments that is severe," that lasted or is expected to last for at least twelve months. *See* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). To be a severe impairment, an impairment must "significantly limit[ the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c),

---

[3] The Court notes that the ALJ appears to have relied on FNP Dicus's state agency consultative report in concluding that Plaintiff's GI impairments were not severe, even though FNP Dicus's statement that there were "no GI records at all related to her reports of severe IBS with fecal incontinence" indicates that FNP Dicus did not have access to any of Dr. Gates's or Dr. Schneider's records concerning Plaintiff's numerous GI impairments. *See* (Tr. 17–18); *McCoy v. Astrue*, 648 F.3d 605, 616 (8th Cir. 2011) ("[T]he opinion of a nonexamining consulting physician is afforded less weight if the consulting physician did not have access to relevant medical records, including relevant medical records made after the date of evaluation." (citing *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010))). FNP Dicus also said in the report that there was "no mention of cane/assistive devices" in Plaintiff's orthopedic and pain clinic records from 2018 and 2019 and "no mental health records to support her reports of having Bipolar disorder," (Tr. 525), but the record before this Court shows otherwise, (Tr. 334) (noting that the plan of care was to "get an MRI of [Plaintiff]'s lumbar spine" and that "she has failed to improve with time, activity modification, oral anti-inflammatory medications in the past[,] and use of assistive devices"); (Tr. 513) (diagnosing Plaintiff with Bipolar I disorder). Given that FNP Dicus was apparently unable to review a significant number of relevant medical records, the Court finds the ALJ's reliance on her report misplaced.

416.920(c). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)).

While the requirement of severity is "not a toothless standard," it is also not an "onerous requirement for the claimant to meet." *Kirby*, 500 F.3d at 708. It is Plaintiff's burden to prove the existence of severe impairments, but "the burden of a claimant at this stage of the analysis is not great." *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

"In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status." *Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998). "Evidence from outside the insured period can be used in 'helping to elucidate a medical condition during the time for which benefits might be rewarded.'" *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) (quoting *Pyland*, 149 F.3d at 877). "The time of an examination is not dispositive of whether evidence is material; medical evidence . . . is material if it relates to the claimant's condition on or before the date of the ALJ's decision." *Cunningham v. Apfel*, 222 F.3d 496, 501–02 (8th Cir. 2000). "If the diagnosis is based upon a 'medically accepted clinical diagnostic technique,' then it must be considered in light of the entire record to determine whether 'it establishes the existence of a "physical impairment" prior to' the expiration of the claimant's insured status." *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984) (quoting *Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir. 1981)). Thus, medical evidence of claimant's condition outside the period of disability "is relevant evidence because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status." *Id.*

8

Here, in concluding that Plaintiff's IBS and other GI impairments were not severe, the ALJ appears to have relied heavily on the relative lack of objective medical records from the relevant time period beginning on December 14, 2018, and ending on September 30, 2021. *See* (Tr. 17–18).  Despite acknowledging that Plaintiff was diagnosed with and received regular treatment for IBS, GERD, several other GI impairments in 2018 and early 2019, the ALJ appears to have disregarded the objective medical records that pre-dated the alleged onset date. *See id.*  However, the objective medical evidence that pre-dated the onset date is relevant evidence that "bear[s] upon the severity" of Plaintiff's condition during the period of disability. *See Basinger*, 725 F.2d at 1169.  As such, the ALJ should have considered this evidence when evaluating Plaintiff's alleged disabilities.  *See id.*; *Cunningham*, 222 F.3d at 501–02.

This error is especially pronounced here, as the ALJ provided little in the way of explanation for his conclusion that Plaintiff's IBS was not severe,[4] and he appears to have based his decision solely on a lack of objective medical evidence from the relevant time period. *See* (Tr. 18) ("Although Dr. Schneider's 2018 treatment records discussed . . . [Plaintiff]'s problems with IBS and her reported incontinence," her medical records "for the period beginning on December 14, 2018 . . . d[id] not show that IBS me[t] the standards for a severe impairment.").  Further, the ALJ's failure to consider Plaintiff's GI impairments severe at Step

---

[4] The Court notes that the ALJ provided no explanation for concluding that any of Plaintiff's other GI impairments were not severe.  (Tr. 17–18).  Additionally, it is unclear from the record whether the ALJ properly considered the combined effect of Plaintiff's GI impairments with her non-GI impairments, as he was obligated to do, in reaching his determination that her GI impairments were not severe.  *See id.*; *Reinhart v. Sec'y of Health & Human Servs.*, 733 F.2d 571, 572–73 (8th Cir. 1984) ("The ALJ was obligated to consider the combined effect of [Plaintiff]'s impairments." (citing 20 C.F.R. § 404.1522)); *Layton v. Heckler*, 726 F.2d 440, 442–43 (8th Cir. 1984) ("Each illness standing alone, measured in the abstract, may not be disabling. But disability claimants are not to be evaluated as having several hypothetical and isolated illnesses. These claimants are real people and entitled to have their disabilities measured in terms of their total physiological well-being." (quoting *Landess v. Weinberger*, 490 F.2d 1187, 1190 (8th Cir. 1974))).

2 apparently caused him to overlook the symptoms of those impairments at subsequent Steps. *See* (Tr. 27–28); 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) (requiring the ALJ to consider severe and non-severe impairments in determining the claimant's RFC).  Given that "[s]everity is not an onerous requirement for the claimant to meet," *Kirby*, 500 F.3d at 708, once the 2018 records are considered it does not appear that the combined effect of Plaintiff's GI impairments amounted only to a "slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  *See id.* at 707; *e.g.*, (Tr. 283) (stating that Plaintiff had a "1-year history of abdominal pain with 60 pounds weight loss" and "[e]pisodic left-sided abdominal pain," and that the transient intussusception observed during an exam could be an explanation for transient left abdominal pain"); (Tr. 286) ("Pertinent positive symptoms include loss of appetite, abdominal pain, change in bowel habits, diarrhea, nausea, [and] vomiting."); (Tr. 290) ("Diarrhea is her main complaint.  Keeps two sets of clothes with her when she travel[s]."); (Tr. 308–310) (noting that Plaintiff sometimes has diarrhea for two days, recommending that she take Imodium AD, and diagnosing Plaintiff with IBS, morbid obesity, and GERD).

Additionally, while there are more objective medical records of Plaintiff's GI impairments that pre-date the alleged onset date, there are objective medical records that discuss Plaintiff's GI impairments during the relevant time period.  *See, e.g.*, (Tr. 333) (noting that Plaintiff has a medical history of "Severe IBS"); (Tr. 334) (stating that Plaintiff was positive for weight loss, fatigue, diarrhea, and constipation); (Tr. 339) (explaining that Plaintiff "has severe IBS, was recently diagnosed with inflammatory bowel disease," "significant weight loss with the severe inflammatory and irritable bowel syndromes, going from 352 to 272 [pounds], over the last year," and "episodes of alternating loose and constipated stools");

(Tr. 477, 483) (noting that Plaintiff has IBS); (Tr. 495) (noting that Plaintiff has IBS, diarrhea, constipation, and difficulty swallowing.).  Regardless of whether the medical records pre-date or post-date the alleged onset date, "[t]he ALJ cannot simply ignore the uncontradicted medical evidence that" Plaintiff was diagnosed with multiple GI impairments, including IBS, GERD, gastritis, and transient intussusception, which cause her to suffer from fecal incontinence, diarrhea, constipation, and abdominal pain. *See Reinhart v. Sec'y of Health & Human Servs.*, 733 F.2d 571, 572–73 (8th Cir. 1984) (reversing and remanding for reconsideration of whether claimant suffered from severe impairment due to psychiatric problems with back, neck, and leg pain where ALJ ignored uncontradicted medical evidence that claimant suffered from pain having its origin in a psychological disorder).

Finally, the Court agrees with Plaintiff that the ALJ does not appear to have considered that her decrease in treatment for her GI issues during the relevant time period might have been caused by her inability to afford medical care after she lost her health insurance, despite Plaintiff testifying that, when her husband lost his job, she lost her health insurance, and she had no insurance for the following two years. *See* (Tr. 48, 57); SSR 16-3p, 2017 WL 5180304, at *9–10 (requiring ALJs to consider why a claimant might not seek treatment, including an inability to "afford treatment," before discounting an individual's reported limitations on that basis); *Forehand v. Barnhart*, 364 F.3d 984, 988 (8th Cir. 2004) (finding that plaintiff's conservative approach to treatment was not significant in credibility determination given her financial constraints where she "must pay for each doctor visit in cash out of her own pocket"). Accordingly, the Court finds that the ALJ failed to consider material evidence and improperly used the lack of medical records during the relevant time period to conclude that Plaintiff's numerous GI impairments were not severe.

## 2.   *The ALJ's RFC Finding Is Not Supported by Substantial Evidence*

Plaintiff argues that the ALJ's failure to properly evaluate the severity of her GI impairments at Step 2 was compounded when the ALJ failed to account for the limitations caused by those GI impairments in crafting an RFC at Step 4.  The Court agrees and finds that the ALJ overlooked some of Plaintiff's important functional limitations caused by her GI impairments.

"The ALJ must determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations."  *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (alteration in original) (quoting *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003)).  "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians."  *Id.* (quoting *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012)).

In finding that Plaintiff had the RFC to perform light work with some postural and environmental limitations, the ALJ first noted without comment that Plaintiff had alleged that she suffered from severe IBS symptoms in her July 20, 2021, adult disability report and then proceeded to list the other non-GI impairments that Plaintiff described during the hearing.  (Tr. 22).  The ALJ stated that, while he found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the period under consideration [for the] reasons explained in this decision."  *Id.*  However, the ALJ's decision does not provide an explanation for discounting Plaintiff's statements regarding the intensity, persistence, and limiting effects of her GI-related symptoms.

12

In crafting an RFC, the ALJ's only discussion of any of Plaintiff's GI impairments was the following:

> The undersigned has reviewed the October 7, 2021 State agency consultative report prepared by Margaret Dicus, FNP. She reported on inconsistencies in her review of records, including a lack of information concerning severe IBS, bipolar disorder, and assistive devices. As noted above, the claimant's medical records show that Dr. Schneider diagnosed IBS, and that the claimant complained about needing a change of clothing. However, the undersigned does not find a characterization of severe IBS in his treatment records. On September 13, 2018 Dr. Schneider stated that the claimant required "low to moderate severity" for that visit. On January 9, 2019, approximately one month after her amended onset date, the claimant reported that her IBS was better controlled.[5]

(Tr. 27–28) (citations omitted).

First, the ALJ mischaracterized the October 7, 2021, consultative report. After noting that Plaintiff reported "severe IBS (states has to carry extra changes of clothing everywhere she goes, due to having incontinence related to it)"—more than three years after Plaintiff initially reported her symptoms of chronic diarrhea and fecal incontinence to Dr. Schneider—FNP Dicus stated that "[t]here are no GI records at all related to her reports of severe IBS with fecal incontinence." (Tr. 524–525). As noted above, FNP Dicus's apparent lack of access to Plaintiff's medical records related to her GI impairments is not an inconsistency.

---

[5] While it is unclear due to the brevity of the ALJ's discussion of Plaintiff's GI impairments, the Court notes that the ALJ may have improperly discounted Plaintiff's subjective complaints solely because they are not fully supported by the objective medical evidence during the relevant time period. *See Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). On remand, "[i]n assessing [Plaintiff]'s credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints." *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)).

Second, to the extent the ALJ found Plaintiff's report of severe IBS symptoms was inconsistent with Dr. Schneider's statement that Plaintiff "require[d] Low to Moderate Severity care for this [September 13, 2018] visit," (Tr. 310), the Court does not understand that to be an inconsistency. Instead, it appears that Dr. Schneider was merely noting that Plaintiff's was not in need of emergency medical care on that specific day, which is consistent with someone presenting with chronic GI disorders and with Dr. Schneider's conclusion that "management options are [l]imited." *See id.* In keeping with Dr. Schneider's opinion, at her appointment with FNP Blake Borders the following week, Plaintiff stated that Dr. Schneider had diagnosed her with severe IBS and "mention[ed] IBS is not treatable." (Tr. 402).

Third, Plaintiff's January 9, 2019, statement that her IBS was "better controlled" is consistent with having multiple chronic GI disorders with symptoms that are episodic but could still "significantly limit[ the claimant's] physical or mental ability to do basic work activities." *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). Further, the record shows that on January 23, 2019, Plaintiff had "severe IBS," "was recently diagnosed with inflammatory bowel disease," and "had significant weight loss with the severe inflammatory and irritable bowel syndromes, going from 352 to 272 [pounds], over the last year." (Tr. 339). Plaintiff also reported that she was still experiencing "cramping when she eats" and "episodes of alternating loose and constipated stools." *Id.* Further, on October 7, 2021—over three years since she reported her fecal incontinence to Dr. Schneider—Plaintiff reported to FNP Dicus that she "has to carry extra changes of clothing everywhere she goes, due to having incontinence related to [IBS]." (Tr. 524). Thus, the Court "do[es] not understand the purported inconsistencies identified by the ALJ. And '[a]bsent some explanation for finding an inconsistency where none appears to exist,' [the Court] will not fill in the gaps for the ALJ." *See Lucus v. Saul*, 960 F.3d 1066,

1069 (8th Cir. 2020) (quoting *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005) (holding the ALJ's explanation inadequate where it failed to describe how the claimant's ability to remember short instructions was inconsistent with the inability to concentrate for long periods)).

Finally, the Court cannot say that the ALJ's failure to account for Plaintiff's GI impairments in crafting the RFC was harmless. *See Lucus*, 960 F.3d at 1069 ("An error is harmless when the claimant fails to 'provide some indication that the ALJ would have decided differently if the error had not occurred.'" (quoting *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012))).  At the hearing, the ALJ specifically asked the VE whether an individual with the RFC to perform light work with the Plaintiff's postural and environmental limitations would be able to maintain competitive employment if she "had two unexcused absences per month on a consistent basis" or "required two additional breaks of 15 minutes each, in addition to the regularly scheduled breaks, being the two standard 15-minute breaks and the meal break between them," and the VE responded, "No, Your Honor," to both questions.  (Tr. 64).  If Plaintiff's fecal incontinence and other GI-related symptoms cause her to need to take more frequent bathroom breaks or occasionally miss work, then her ability to perform light work might change, but because the ALJ did not adequately develop the record with respect to Plaintiff's GI impairments, the extent of her limitations is unclear.  Rather than disregarding Plaintiff's GI-related limitations entirely, the ALJ should have inquired further to determine the severity of her GI impairments.  *See Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (stating that an ALJ may order medical examinations and tests when the medical records presented to him constitute insufficient medical evidence to determine whether the claimant is disabled).  Because the Court "cannot determine whether the ALJ would have reached the

same decision denying benefits[] even if [the ALJ] had followed proper procedure," the ALJ's errors were not harmless.  *See Lucus*, 960 F.3d at 1070.

## **CONCLUSION**

For the foregoing reasons, the Court finds that the ALJ's determination is not supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Acting Commissioner is **REVERSED** and **REMANDED**.

A separate Judgment will accompany this Memorandum and Order.

Dated this 25th of March 2025.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE